Good morning. Good morning. And may it please the court. Carson Bakker, Federal Defenders of San Diego, for Appellant Adrian Chavez-Nava. I'll try to keep an eye on the clock and I'm going to try to reserve two minutes for rebuttal. Just so we can cut to the chase, let's assume for a moment that the use of the term overwhelming perhaps crossed the line. What do we do with it? Well, Your Honor, we're asking the court to apply plain error review, cumulative review, and find that the misconduct by the prosecutor requires reversal of the conviction. Now, why is that? There's a huge amount of evidence here. I mean, this guy kept coming back and back. I mean, it's just – it's like there's a mountain of evidence. He was probably right about the overwhelming evidence. He shouldn't have said it, but there was a huge amount of evidence. Are we to overlook that? Doesn't the case law say that we're supposed to look at the overall – determine whether there's any harmless error here? Yes, Your Honor, but I point out that this is not your typical illegal reentry case. This is a case – It sure isn't. Right. This is a case where the evidence showed that Mr. Chavez had a second A number that had a pending application for legalization in it, that he also had qualifying family members who may have been able to petition for some sort of legal status for him. These are not the type of facts that you see in an everyday illegal reentry case. And given – those facts constitute a gap in the record, a gap that the prosecutor responded to by engaging in improper argument. The reference to overwhelming evidence of guilt and the evidence of guilt proves overwhelmingly that Mr. Chavez is guilty is just one of a number of – I'm not sure that that in itself is improper argument. What makes – if the evidence is overwhelming and the prosecutor says so, why is that improper argument? Well, Your Honor, under Ruiz, the use of the phrase the evidence of guilt is overwhelming constitutes vouching by the prosecutor. All by itself? Now, I can see where the phrase you have in here where it says the United States considers this overwhelming evidence. I see the vouching there. But I'm not sure that unless Ruiz says it specifically, does it specifically say that using the word overwhelming evidence is inherently vouching? Your Honor, you're correct. The phrase in – or the sentence in Ruiz that was found to be improper was the United States considers this evidence to be overwhelming. But if this Court also looks at its decision and – That's classic vouching. That's saying somebody else believes this and, therefore, you should. Right. But just using the adjective overwhelming is just a descriptive. You are arguing your case. And the prosecutor is arguing his case. And defense attorneys say this is weak evidence. Prosecution says it's strong evidence. I'm not sure why that's improper. Well, I have two points – two points to respond with. The first is that under Garcia-Guizar, which is another case out of this Court, in that case, the phrase that was found to be improper was, this man is a liar. And even though it wasn't preceded by the words we believe or the government believes. All right. This man is a liar. Donald Trump, for the contrary notwithstanding, is improper language. And you're not supposed to be getting up to insult the defendant. You're supposed to be getting up to argue the evidence in the case. I don't see why that one had anything to do with this. I would concede that that language is more colorful than the language that we have here. But Ruiz made a distinction. Let's even assume for a moment, just arguendo, that the word overwhelming was improper here. Don't we go back to Darden ultimately? Our case is Hine or Hain. And ultimately, we have to determine whether there was a reasonable probability of a different result as a result of what was said. And I'll be honest with you. I'm having real difficulty seeing how the use of this word would have had any impact on it. Why am I mistaken? Well, Your Honor, Your Honor is mistaken because the use of the term overwhelming was not the only instance of misconduct in this case. Okay. What's the other one? We also have the use of the phrase machination, referring to the defense's case as a machination. And the first definition of that term in Black's dictionary is an act of planning a scheme, especially for an evil purpose. This is a particularly inflammatory language. What are the other definitions? There are other definitions that were pointed to in the government's response. Isn't it relevant that there were other definitions? You found the one that helped you most, but there are other definitions, aren't there? That's correct, Your Honor. But this court has said that you have to look at the record in toto, in the context of the entire trial. In addition to saying machinations, the prosecutor also said the grossest speculation a number of times. He also said during the direct examination of the AFAL custodian that this second A number had been sprung on the government earlier that morning. What that did is it led to a running theme throughout the prosecutor's closing argument, that the evidence of guilt was so overwhelming that the only thing that the defense could do Well, the prosecutor's entitled to make a closing argument. He's entitled to put the best spin on the evidence that's there. That's part of our process. What he can't do is vouch. He can't put the prestige of the United States, in this case, behind the evidence and just say the United States says this means X. Now, I get your point that overwhelming, I'm not sure I agree with your other point about the Machiavellian type thing, but take overwhelming, you know, maybe that was close. But ultimately, we have to look at when you take the totality of the evidence, if there's a reasonable probability there would have been a different result. And there's just a lot of stuff here. I mean, this record is replete with evidence that this guy just kept coming back, coming back, doing whatever he wanted to and ignoring what had happened before. Well, Your Honor, let me get to the prejudice analysis. Okay. It sounds like that's what the Court is interested in. Yeah. So the fact is that there was a pending application for legalization. For what? What that means is that there might have been something in this other A file or on the claims database under this other A number that may have showed that Mr. Chavez had a right to be in the United States. Wouldn't that be the grossest speculation to say that? Well, that's certainly what the prosecutor believed. But this is not speculation. This is grounded in the evidence. The jury heard testimony by the A file custodian that the A file is meant to be a chronological history of an individual's contact with immigration, that it contains certain documents that don't exist in other locations, and that certain applications filed by qualifying family members could result in ---- But following what my colleague says here, in terms of speculation, you don't know what was in the A file. What you do know was there was an affirmative official document showing that Chavez was a citizen of Mexico. The government had more than sufficiently demonstrated grounds to conclude that he was not a U.S. citizen. He entered no rebuttal evidence other than the contention he applied for reentry. He didn't know whether the application had been denied. I mean, you know, a certificate. Mexico is a citizen. I mean, come on. That wasn't in. There was nothing in the record. There was no birth certificate. There was no registration of birth in Mexico. So there were a number of statements that Mr. Chavez made admitting to citizenship. Okay, well, take that along. I mean, you know, if somebody says, I'm a citizen of Mexico, is he going to then turn around and say, you know, I was just kidding. Look at the A file. Take the A train. Let me. I have two points, two things I want to say to that. First of all, it is the government's burden to fill in the gaps. So I think we would all agree on that. It's the government's burden here. It's not Mr. Chavez's burden to prove affirmatively that he is a citizen. But there was also evidence introduced at trial that showed that Mr. Chavez may not have been aware of his legal status. He was not able to write. He was not able to even sign his own name in certain circumstances. He did not even know that his mother had naturalized. Do you want to save any time? Oh, yes, Your Honor. I would like to reserve the remainder for rebuttal. Thank you. I don't mean to interrupt your scintillating language, but if you want to save time, okay. Thank you. I would just say that there was evidence that shows that Mr. Chavez may not have been aware of his legal status. Okay, great. Thank you. Thank you. Here for the government. May it please the Court, Benjamin Hawley for the United States. To jump straight to the harmlessness analysis, this was not a case where it was a conundrum or a whodunit. It was clear that Mr. Chavez came across into the United States and had no legal status. Not only the one piece of evidence that the defense pointed to was this A number in that file indicating that he may have applied for citizenship in 1989. But for that to reach any type of reasonable doubt, that application, first of all, would have had to be granted. There's no evidence that it was. It was not in his A file. It was not in any government databases anywhere. It would have had to survive three subsequent deportations, and it would have to, again, he would not have admitted both in the field to the agents, at the station to the agents, and in a federal district court that he was a citizen of Mexico with no legal right to enter or remain in the United States. So bottom line is what he was proposing was speculative, and if you were doing it to counter what the government said, he bore the burden to show that, right? In other words, just take his statement alone. He says, I'm a citizen of Mexico. If he wants to refute that, he's got to come up with something, right? In the sense of a persuasive. Right, right. Not in the sense of, obviously, the government bears the burden of beyond reasonable doubt. Of course only, sure. Right. So, yes, but that's what he pointed to. The only other, I guess, speculation, not even really evidence that he pointed to, was that his mother had become a citizen or had status at least, and his wife had status. But that was the extent of the evidence in that regard. We had no indication that they applied for him. In fact, the mother didn't have status until Mr. Chavez was about 46 years old, had applied for status for two other people, neither of which was Mr. Chavez. So there are these things on the record, but in no way do they lead to reasonable doubt, and that's exactly what the prosecutor was arguing, was saying, not only have we met our burden, the evidence or the arguments that the defense is making don't get anywhere near reasonable doubt. We've easily cleared that hurdle. The evidence is overwhelming, and that's where that statement came in. The final point I'd make on that is that, as Mr. Chavez has conceded, this is a plain error standard, at least for the overwhelming comment. So even if it's potentially error, maybe not, there's no indication that it's plain error, that the district court should have sua sponte jumped in and stopped the proceedings at that point, because at worst for us, the case law goes both ways. Unless the Court has any other questions? And my colleagues don't. Thank you. Time for rebuttal, sir. I would just point out that the defense has the right to poke holes in the government's evidence and to make sure that the government has met its burden of proof in this case. No question. That was the defense's theory of defense, is that the government had not met its burden and hadn't done that by leaving significant gaps in the evidence. The AFAL custodian explained that in order to do a thorough search about whether or not someone is a citizen or if they have permission to be here. Forgive me, Counsel. What were the significant gaps in the evidence? That there was a whole other A number that had never been searched. Again, he was deported three times before. He said he was a citizen of Mexico and on and on and on and on. The question is, does he have a right to be in the United States? Where's the evidence anywhere that confirms that he did? Well, so it's what I would say is that the deportations were all under the first A number. So there's no indication in the record that the immigration was. What element of the offense was there not evidence of? You talk about gaps in the evidence. The United States is not required to prove all the possible things in the world. They're required to prove the crime. What element do you say there is a gap as to the evidence? Both permission to reenter and alienage. Alienage? That's right, Your Honor. With his own admissions? Well, because that's not much of a gap, Counsel. Your Honor, sometimes people can be citizens and not know that they're citizens. And the fact is that there was not. You mean children, infants? Usually it does come in the. Oh, that's true. But there was an application for legalization pending in that other A number that went unsearched. The government never brought any evidence to show that it had been denied, that it had been granted, or that it was still pending. And that was the government's burden. It was not Mr. Chavez's burden to do. Okay. Thank you. Thank you very much. We have your argument. And we thank you both, Counsel. The case just argued is submitted.
judges: Sentelle, Farris, M. Smith